**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| LENNON PRICE, Individually, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| Vs. | ) | Case No.  12-1432-CM-DJW |
| | ) | |
| CITY OF WICHITA, and | ) | |
| CITY OF WICHITA POLICE | ) | |
| DEPARTMENT OFFICER | ) | |
| MARK McKEE, Individually and in his | ) | |
| Official Capacity, | ) | |
|     Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT**

**OF PLAINTIFF'S MOTION TO SUBSTITUTE PARTY**

COMES NOW the Plaintiff, Lennon Price, by and through counsel of record, James A. Thompson, of the law firm Klenda Austerman, LLC, and respectfully moves the Court to substitute Officer Cory Masterson for Defendant Mark McKee.   In support of this motion, Plaintiff states as follows:

**NATURE OF THE MATTER BEFORE THE COURT**

This is a civil rights and negligence lawsuit regarding the broken leg suffered by Plaintiff Lennon Price during his arrest by Wichita Police Department officers. Plaintiff mistakenly believed the arresting officer, Officer Mark McKee, injured him during his arrest. After receiving discovery from Officer McKee and the City of Wichita, Plaintiff learned that Officer Cory Masterson broke his leg rather than Officer McKee. Plaintiff took Officer McKee's and Officer Masterson's deposition, in part, to ascertain when Officer Masterson knew or should have known about Plaintiff's lawsuit pursuant to the requirements of Krupski v. Costa Crociere S. p. A., 130 S. Ct. 2485, 2490, 177 L. Ed. 2d 48 (2010). To cite to the record, Plaintiff had to wait until the

corrections from Defendant McKee and Officer Masterson were submitted and the depositions were received. Now that the timeline can be established showing that Officer Masterson timely knew of the suit and that it should have been brought against him, Plaintiff is requesting that he be allowed to substitute Officer Masterson pursuant to FRCP 15.

**QUESTION PRESENTED:**

1. Does FRCP 15 allow for a Plaintiff to add a party if there is a mistake as to the identity of the Defendant and will the substitution relate back to the original filing?

**SHORT ANSWER:**

Yes. Substitution should be allowed and will "relate back" under Fed.R.Civ.Pro. 15(c)(1)(C) if the party to be added knew or should have known about the pending lawsuit. The United States Supreme Court held the amending party's knowledge or its timeliness in seeking to amend the pleading is not relevant to the question of where a substitution should be allowed. See <u>Krupski v. Costa Crociere S. p. A.</u>, 130 S. Ct. 2485, 2490, 177 L. Ed. 2d 48 (2010).

In this case, Officer Cory Masterson (hereinafter "Masterson") knew or should have known that he was the proper party to the lawsuit but for Plaintiff's mistake on the identity of the officer that injured him. Masterson stated during his deposition that the lawsuit should have been filed against him rather than the current Defendant McKee. Officer Masterson also admitted to discussing the case with Defendant McKee after McKee was served with process. McKee stated during his deposition that he is "sure" he discussed the case with Masterson in September 2012, after being served with process. Officer Masterson also admitted to breaking Plaintiff's leg.

Because Plaintiff was required to submit a notice of claim to the City of Wichita pursuant to K.S.A. 12-105b, Masterson knew, or should have known, of the lawsuit filed by Plaintiff within the time limit for serving the lawsuit. The City of Wichita and Officer Cory Masterson

have a identity of interest for the following reasons: 1) the City of Wichita knew of the pending lawsuit after having received the statutory notice required by K.S.A. 12-105b; 2) the City provides legal counsel for all Wichita police officers involved in lawsuits; and 3) pursuant to K.S.A. 75-6108, 75-6109, and 75-6116, the City is financially responsible for all lawsuits against Wichita Police Department officers for injuries they cause in the course of their employment. The identity of interest along with Masterson's actual knowledge that he is the proper party is sufficient to satisfy the substitution requirements of Fed.R.Civ.Pro. 15(c)(1)(C) and <u>Krupski v. Costa Crociere S. p. A.</u>, *supra*. Consequently, Officer Masterson should be substituted for Officer McKee.

**<u>FACTS:</u>**

1. On September 2, 2010, Lennon Price suffered a broken leg while being arrested by Wichita Police Department Officers. See Lennon Price Deposition 97:13-97:15 attached hereto as Ex. 1.

2. Mr. Price believes that a leg kick from behind is what broke the tibia and fibula in his left leg and caused excruciating pain. See Exhibit 1 at 97:13-97:15.

3. Mr. Price was never taken to jail because his leg was broken. Ex. 1 at 16:15-18.

4. Mr. Price's wife, Debra called the Wichita Police Department station and was told that Officer Mark McKee was the arresting officer and given a police case number. *See Price, Debra Deposition 51:3-51:14* attached hereto as Exhibit 2.

5. Mr. Price mistakenly believed Defendant McKee was the officer that kicked his leg.

6. Wichita Police Department Officers called EMS to the scene to provide medical care to Mr. Price and take Mr. Price to the hospital.

7. Lennon Price was never given any documents or notification to appear in court. *See Ex. 1 - Lennon Price Depo. at 66:17 – 68:13.*

8. Since the City of Wichita never pursued charges against Mr. Price until after he filed his lawsuit, Mr. Price never saw any police reports or any other documentation that would have indicated someone other than Defendant McKee injured him.

9. Despite having arrested Mr. Price on September 2, 2010, the City of Wichita never pursued any criminal charges against Mr. Price until May 2013, which is 1) nearly two and a half years after Mr. Price was arrested; 2) after Mr. Price gave the City of Wichita notice of his intended claims pursuant to K.S.A. 12-105b on August 31, 2012 (Ex. 3) ; 3) after the City denied his claim on December 5, 2012 (Exhibit 4);  4) after Mr. Price filed his Petition for his federal claims on August 31, 2012 (ECF No. 4) ; and 5) after he filed his Motion to Amend his complaint on February 22, 2013. (ECF No.9). *See Ex. 1 Lennon Price Deposition 104:5 – 104:16.*

10. Mr. and Mrs. Price initially retained the law firm of Williamson and Ohaebosim to represent Mr. Price in this matter. See Debra Price Deposition attached hereto as Exhibit 2 at 63:12-66:15.

11. After being unable to reach Mr. Ohaebosim or Mr. Williamson regarding his case for nearly two years, Mr. Price retained his current counsel, Mr. Thompson shortly before the expiration of the two year statute of limitations. *Id.*

12. Since Plaintiff's former counsel never provided any documentation, Mr. Thompson was forced to start from scratch with little time prior to filing the petition. *Id.* at 66:13-15

13. Plaintiff and his wife mistakenly believed that Defendant McKee was the WPD officer that injured him. Ex. 1 105:3-8 and 2 at 70:4-8.

14. Pursuant to K.S.A. 12-105b, Lennon Price properly notified the City of Wichita of his claims against the City and the officer that injured him on August 31, 2012. *See 12-105b Notice* attached hereto as Exhibit 3.

15. Plaintiff also filed his Complaint alleging violation of his 4th Amendment rights on August 31, 2012, while preserving his right to file state law claims once the City denied his 12-105b notice of claim. (ECF No. 4.)

16. Pursuant to Fed.R.Civ.P. Rule 4(m), Plaintiff had 120 days from August 31, 2012 to serve Defendants with service of process.

17. Plaintiff filed his Complaint (ECF No.4) and 12-105b Notice of Claim (Ex. 3) based on the mistaken belief that Officer McKee, as the arresting officer, was the party who broke his leg.

18. Defendant McKee was served with his Summons on November 14, 2012. (ECF No. 4)

19. Defendants McKee and City of Wichita filed their Notice of Removal removing the case to federal court on November 19, 2012. (ECF No. 4)

20. On December 5, 2012, Defendants City of Wichita and McKee simultaneously filed their Answers to Plaintiff's Complaint. (ECF No. 5 and 6)

21. On December 5, 2012, Defendant City of Wichita also sent its denial of Plaintiff's 12-105b Notice of Claim. *See City Denial attached hereto as Exhibit 4.*

22. Neither the Answers of Defendants, nor the City's denial of Plaintiff's 12-105b claims states that Mr. McKee is not the real party in interest. *Id.*

23. This Court filed its Scheduling Order (ECF No. 8) on February 8, 2013 and set March 15, 2013 as the deadline to add parties or otherwise amend the pleadings.

24. Plaintiff filed his Motion to Amend his complaint to add his state law claims on February 22, 2013. (ECF No. 9) which this Court granted on July 8, 2013. (ECF No. 35).

25. Plaintiff filed his Amended Complaint adding his state law claims (ECF No. 40) on July 19, 2013.

26. Defendants City of Wichita and McKee filed their Answers on August 2, 2013. (ECF 46)

27. Defendants provided some documents including the narrative reports of Masterson and McKee on February 11, 2013 (Ex. 5) but did not file their Initial Disclosures until March 26, 2013, which is after the deadline passed to amend the complaint to add parties.

28. At the time that Defense counsel sent these documents, Plaintiff's counsel's daughter was sick and scheduled to have surgery March 14, 2013; therefore these documents were not reviewed until after March 26, 2013 when Defendant McKee filed his initial disclosures.

29. The police reports of Officer Cory Masterson (Badge # 2280) provided to Plaintiff as part the initial disclosures on February 11, 2013 state that Officer Masterson attempted a "leg sweep" using the bottom of his right foot against the back of Mr. Price's left leg. *See Masterson Narrative Report* attached hereto as Exhibit 5.

30. Neither McKee's narrative report nor Masterson's show when Defendant McKee informed Masterson of the lawsuit. Ex. 5.

31. After the City retained the law firm of Fisher, Patterson, Sayler, and Smith of Topeka to represent it in civil rights cases, lead counsel for Defendants, Mr. Pigg, entered his appearance in this case on May 31, 2013 (ECF No. 25) and is City counsel in 5 other civil rights cases with Plaintiff's counsel regarding City of Wichita Police officers.

32. The addition of new counsel unfamiliar with the cases has caused understandable delays as Defense counsel got itself up to speed.

33. Defendant Officer McKee was deposed on June 26, 2013. *See Exhibit 6 - Dep. Of Mark McKee.*

34. Defendant McKee's "corrections" to his deposition were mailed to Plaintiff's counsel on August 27, 2013. *Id.*

35. During his deposition, McKee stated the following:

    a. Mark McKee states he may have looked at the other officer's reports when he got sued in September 2012. *See Ex. 6* at 7:1-13

    b. Mark McKee spoke with Cory Masterson after he got sued. *Id.* at 85:7 -9.

    c. Mark McKee is "sure" he spoke with Cory Masterson in September 2012 when he found out he got sued by Lennon Price. *Id.* at 9:23 - 10:9.

    d. Mark McKee found out about Lennon Price's lawsuit against him in September 2012 "within a month of the lawsuit." *Id. at* 9:23 – 10:5.

    e. Mark McKee told Cory Masterson about the lawsuit regarding Lennon Price and his broken leg and that the suit should have been brought against Masterson and not him. *Id. at* 85:7 – 86:5.

36. Mark McKee's "correction sheet" for his deposition, which was provided more than two months after his deposition, states that he found out about the lawsuit when he was served with the Petition on November 14, 2010, and that he met with defense counsel and city attorney, Chan Townsley, shortly after on November 19, 2010. *See McKee Correction Sheet* in Ex. 6.

37. Mark McKee's correction sheet also states that he does not specifically recall when he spoke with Officer Masterson but they "probably talked at some point." *Id.*

38. Officer Masterson was deposed on June 27, 2013, and his deposition was received in September 2013.

39. During his Deposition, Masterson made the following admissions:

a. Cory Masterson admits that Mark McKee spoke with him regarding the lawsuit filed by Lennon Price. *See Ex. 7. at* 9:4 – 7.

b. Cory Masterson admits that he spoke with Mark McKee at least three times regarding the lawsuit by Lennon Price. *Id. at* 9:8 – 13.

c. Cory Masterson admitted that when Mark McKee told him it was the "dislocated ankle incident" that he knew right away what the case was. *Id. at* 10:7 – 13.

d. Cory Masterson understood Lennon Price's case involved accusations of excessive force. *Id. at* 12:1 – 4.

e. Cory Masterson admitted he believes that it was his kick when taking down Lennon Price that broke Lennon Price's ankle. *Id. at* 131:14 – 17.

f. Cory Masterson stated he understood that as the proper party to the lawsuit he should be in the suit and not Officer McKee. *Id.* at 9:14-10:1.

g. Cory Masterson admits that he told the hospital staff that Lennon Price's ankle injury is a result of him tripping Lennon Price. *Id. at* 130:16 – 20.

h. Cory Masterson admits that he was acting in his capacity as a Wichita Police Department officer when Lennon Price was arrested on September 2, 2010. *Id. at* 26:18 – 21.

40. The City of Wichita Legal Department handles all claims against the City of Wichita and its police officers. Consequently, the potential defendant, Officer Masterson, and the current defendants, Officer McKee and the City of Wichita, are all represented by the same counsel.

41. Pursuant to K.S.A. §75-6108, the City of Wichita must defend any civil action or proceeding against Mastserson and McKee in their official or individual capacity or both for any acts or omissions in the scope of their employment by the City of Wichita.

42. Pursuant to K.S.A. §75-6109, the City of Wichita is liable and must indemnify McKee and Masterson against damages for injuries caused by their act or omission while acting in the scope of their employment.

43. Pursuant to K.S.A. 75-6116, the City of Wichita must indemnify and defend Masterson and McKee if they are subject to personal liability for any non-criminal act or omission which is within the scope of their employment and which is alleged to violate the civil rights laws of the United States, the State of Kansas or the City of Wichita.

## ARGUMENTS AND AUTHORITY

Amendments to pleadings in Federal Court are governed by F.R.C.P. 15(c), which states as follows:

> (c) Relation Back of Amendments.
> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> **(i) received such notice of the action that it will not be prejudiced in defending on the merits; and**
> **(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.**

(Emphasis added.)

Based on the foregoing, Fed.R.Civ.P. 15(c) (hereinafter "Rule 15(c)") sets forth the two part test for determining whether Mr. Price should be allowed to substitute Masterson for Defendant McKee based on a mistaken identification.  First, did Masterson receive such notice of the action that he will not be prejudiced in defending on the merits? Second, did Masterson know, or should he have known, that the action would have been brought against him, but for a mistake concerning the proper party's identity.

In *Krupski v. Costa Crociere S. p. A.*, 130 S. Ct. 2485, 177 L. Ed. 2d 48 (2010) the United States Supreme Court squarely addressed the issue of mistaken identity of defendants and enunciated the standard by which the lower courts were to measure whether the plaintiff could amend her pleadings to name the new defendant based on that mistake even **after the statute of limitations expired**.   In that case, the plaintiff, Ms. Krupski, was injured while on a cruise and unknowingly sued the wrong party. *Krupski*, 130 S.Ct. at 2487. Costa Cruise Lines issued her ticket but the ticket identified Costa Crociere S.p.A. as the carrier. *Id.* Over the next several months "after the limitations period had expired," Costa Cruise brought Costa Crociere's existence to the Plaintiff's attention three times, including in its motion for summary judgment, in which it stated that Costa Crociere was the proper defendant.   **Well after the statute of limitations expired, and even after summary judgment**, Ms. Krupski responded and moved to amend her complaint to add Costa Crociere as a defendant who was represented by the same counsel and was a subsidiary of the original Defendant. *Id.* After Ms. Krupski served Costa Cruciere with her Amended Complaint, the district court dismissed Costa Cruise from the case. *Id.* Costa Crociere then moved to dismiss, contending that the amended complaint did not satisfy the requirements of Federal Rule of Civil Procedure 15(c). *Id.*

The District Court concluded that Ms. Krupski had not made a mistake about the proper party's identity because she delayed for months filing an amended complaint even though Costa Cruise had disclosed Costa Crociere's role in several court filings several months earlier. *Id.* The Eleventh Circuit Court of Appeals affirmed the dismissal of the District Court. *Id.* The Eleventh Circuit held that since Ms. Krupski furnished the ticket identifying Costa Cruciere to her counsel well before the limitations period ended that Krupski either knew or should have known of Costa Crociere's identity as a potential party. *Id.* Consequently, the Court treated her as having chosen

to sue one potential party over another, and that relation back was not appropriate because of Krupski's "undue delay" in seeking to amend the complaint. *Id.* at 2487-88.

The United States Supreme Court took issue with the lower courts' analysis wrongly focusing on what Ms. Krupski's delay and what she knew rather than on what Costa Crociere knew. The Supreme Court reversed the district court and the Eleventh Circuit Court of Appeals holding as follows:

> We hold that relation back under Rule 15(c)(1)(C) ***depends on what the party to be added knew or should have known***, *not on the amending party's knowledge or its timeliness in seeking to amend the pleading*. Accordingly, we reverse the judgment of the Court of Appeals.

*Id.* at 2490 (Emphasis added.)

In reversing the lower courts, the Supreme Court found those courts conducted the wrong analysis stating "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant knew or should have known* during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint."  *Id.* at 2493. (Emphasis added.) The Court went on to discuss the definition of a "mistake" under F.R.C.P. 15(c)(ii) holding as follows and cited at length:

> **Information in the plaintiff's possession is relevant** *only* **if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity**. For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake. A mistake is "[a]n error, misconception, or misunderstanding; an erroneous belief." Black's Law Dictionary 1092 (9th ed.2009); see also Webster's Third New International Dictionary 1446 (2002) (defining "mistake" as "a misunderstanding of the meaning or implication of something"; "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention"; "an erroneous belief"; or "a state of mind not in accordance with the facts"). That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity. A plaintiff may know that a prospective defendant—call him party A—exists, while

erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties. **The only question under Rule 15(c)(1)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him.**

*Id*. at 2493-94. (Emphasis added)

The defendant in Krupski unsuccessfully argued that if a Plaintiff is aware of the existence of two parties and chooses to sue the wrong one, then a Defendant could "reasonably believe that the Plaintiff did not make a mistake." The Court firmly rejected the Defendant's argument stating:

> We agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity. We disagree, however, with respondent's position that any time a plaintiff is aware of the existence of two parties and chooses to sue the wrong one, the proper defendant could reasonably believe that the plaintiff made no mistake. **The reasonableness of the mistake is not itself at issue.** As noted, a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

Id. at 2494. (Emphasis added.)

The Kansas District Court has cited to Krupski in the case of McGregor v. Shane's Bail Bonds. See McGregor v. Shane's Bail Bonds, 10-CV-2099-JWL, 2010 WL 3155635 (D. Kan. Aug. 9, 2010) aff'd sub nom. McGregor v. Snyder, 427 F. App'x 629 (10th Cir. 2011). In that case, the Plaintiff incorrectly sued Shane Bail Bonds even though she had *actual* knowledge of

the names and identities of correct parties because she wrongfully assumed she had to name the same Defendant from the state law case in that matter. *Id.*(Emphasis added.) Consequently, the Court in McGregor refused to allow the plaintiff to amend her pleading to substitute the correct party finding that the plaintiff had *actual knowledge* of the correct identities and that she intentionally chose to sue the wrong party. *Id.*(Emphasis added.) McGregor differs from the case at hand and Krupski because the plaintiff in McGregor *actually knew the identities* prior to filing suit but because of a misunderstanding of the procedural law, incorrectly named the wrong party even though she knew the correct identity.

Whereas in this case, Mr. Price mistakenly believed Defendant McKee to be the officer that injured him because Debra Price, Mr. Price's wife was told that Defendant McKee was the arresting officer. *See* Ex. 1 at 105:3-8, and Ex. 2 at 51:3-14. Mr. Price never had reason to suspect that his belief that McKee broke his leg was incorrect. Until this case was filed and Defendant sent discovery, Plaintiff never knew the name of the other officers involved because he was never prosecuted for the criminal charges until May of this year, nearly two and a half years after the incident and after this civil case had been filed. Plaintiff's misidentification cannot be deemed anything other than a mistake.

**I.     Officer Masterson will not be prejudiced in defending on the merits because he knew of the lawsuit within the Rule 4(m) period of 120 days from the date the lawsuit was filed.**

Fed.R.Civ.P. Rule 4(m) ("Rule 4(m)") states in pertinent part that a defendant should be served within 120 days after the complaint is filed unless good cause is shown in which case the Court can extend the time for service for an appropriate period.  In this case, Plaintiff filed his original complaint asserting his federal claim under 42 U.S.C. §1983 on August 31, 2012. (ECF No. 4). According to Rule 15(c), if Masterson knew of the lawsuit against Defendant McKee

within 120 days of filing the suit i.e. Monday, December 31, 2012, then Masterson would not be prejudiced from defending the case on the merits. He was given actual notice of the case by McKee. Masterson will have the same counsel as McKee. The City who pays the claim has known from the beginning that the wrong party was sued and never said Defendant McKee was the wrong party in interest.

During his deposition, when questioned about when he found out about the lawsuit, Mark McKee stated he found out in September 2012. *See Exhibit 6 - Dep. Of Mark McKee* at 7:1-13. Mark McKee found out about Lennon Price's lawsuit against him in September 2012 "within a month of the lawsuit." *Id. at* 9:23 – 10:5. Mark McKee spoke with Cory Masterson after he got sued. *Id.* at 85:7-9. Mark McKee is "sure" he spoke with Cory Masterson in September 2012 when he found out he got sued by Lennon Price. *Id.* at 9:23 - 10:9. Mark McKee told Cory Masterson about the lawsuit regarding Lennon Price and his broken leg and that the suit should have been brought against Masterson and not him. *Id. at* 85:7 – 86:5.

During his deposition, when asked about when he found out about the lawsuit against Defendant McKee, Officer Cory Masterson admitted that Mark McKee spoke with him regarding the lawsuit filed by Lennon Price. *See Masterson Dep. Ex. 7. at* 9:4-7. Cory Masterson admits that he spoke with Mark McKee at least three times regarding the lawsuit by Lennon Price. *Id. at* 9:8-13. Cory Masterson admitted that when Mark McKee told him it was the "dislocated ankle incident" that he knew right away what the case was. *Id. at* 10:7-13. Cory Masterson understood Lennon Price's case involved accusations of excessive force. *Id. at* 12:1-4.

Officer Masterson clearly knew about Plaintiff's lawsuit within the 120 days contemplated by Rule 15(c) applying Rule 4(m). Officer Masterson admits he was told about the

lawsuit. Defendant McKee told Officer Masterson within a month of being sued in September 2012, about the lawsuit and that it should have been Masterson that was sued instead of himself.

No new discovery needs to be completed. Depositions have already been taken, and expert depositions will be taken soon.

**II.      Officer Masterson and the City of Wichita knew, or should have known, within the Rule 4(m) period that this lawsuit would have been brought against Officer Masterson, but for a mistake concerning his identity.**

The language of Rule 15(c) states that the proper analysis is whether the party to be added "knew, or should have known" that the lawsuit would have been brought against it but for a mistake concerning the proper party's identity. Therefore, the Court can look at both what Officer Masterson knew or what he should have known regarding the lawsuit.

*What did Officer Masterson "know"?*

Officer Masterson's knowledge about the lawsuit of Mr. Price is clear when looking at the testimony of Officer Masterson during his deposition. (Ex. 7) Officer Cory Masterson stated he understood that he is the proper party to the lawsuit and not Officer McKee. Id. at 9:14-10:1. Officer Cory Masterson admitted he believes that it was his kick when taking down Lennon Price that broke Lennon Price's ankle. *See Masterson Dep. Ex. 7* at 131:14-17. Cory Masterson admits that he told the hospital staff that Lennon Price's ankle injury is a result of him tripping Lennon Price. *Id. at* 130:16-20. Cory Masterson admits that he was acting in his capacity as a Wichita Police Department officer when Lennon Price was arrested on September 2, 2010. *Id.* at 26:18-21.  The narrative report of Officer Masterson shows that he was the officer that injured Mr. Price. (Ex. 5) During his deposition, when asked about when he found out about the lawsuit against Defendant McKee, Officer Cory Masterson admitted that Mark McKee spoke with him regarding the lawsuit filed by Lennon Price. *See Masterson Dep. Ex. 7 at* 9:4-7. Cory Masterson

admits that he spoke with Mark McKee at least three times regarding the lawsuit by Lennon Price. *Id. at* 9:8-13. Cory Masterson admitted that when Mark McKee told him it was the "dislocated ankle incident" that he knew right away what the case was. *Id. at* 10:7-13. Cory Masterson understood Lennon Price's case involved accusations of excessive force. *Id. at* 12:1-4.

### *Officer Masterson knew or "should have known" about the lawsuit.*

The Tenth Circuit Court of Appeals in <u>Graves v. Gen. Ins. Corp.</u>, 412 F.2d 583, 585 (10th Cir. 1969) stated a motion to amend to add a new party should be granted "where the new and old parties have such an identity of interest that it can be assumed that relation back will not prejudice the new defendant.; *see also* <u>Young v. Farrar</u>, 10-4108-KHV, 2011 WL 2173944 (D. Kan. June 2, 2011)(citing <u>Graves</u> and holding "An amendment to a pleading that adds a new party will relate back where "the new and old parties have such an identity of interest that it can be assumed that relation back will not prejudice the new defendant.")

K.S.A. 12-105b required Mr. Price to give notice of his state law claims to the City of Wichita prior to filing suit on those claims. Mr. Price gave the required notice on August 31, 2012. Mr. Price filed his federal lawsuit for the civil rights violations on the same day and preserved his right to amend his complaint to add his state law claims when they were denied by the City of Wichita. *See* Exhibit 3 and ECF No. 4.  In giving the 12-105b notice to the City of Wichita as required, the City of Wichita should have performed its due diligence investigation into the charges including pulling the police reports and speaking with the officers involved. Consequently, regardless of whether Officer Masterson states that he "knew" of the lawsuit, Officer Masterson "should have known" based on the required notice given to the City of Wichita pursuant to K.S.A. 12-105b at the same time as the federal lawsuit was filed.

During his deposition, when questioned about when he found out about the lawsuit and when he told Officer Masterson, Mark McKee stated he found out in September 2012. *See Exhibit 6 - Dep. Of Mark McKee* at 7:1-13.  Mark McKee found out about Lennon Price's lawsuit against him in September 2012 "within a month of the lawsuit." *Id. at* 9:23 – 10:5. Mark McKee spoke with Cory Masterson after he got sued. *Id.* at 85:7-9. Mark McKee is "sure" he spoke with Cory Masterson in September 2012 when he found out he got sued by Lennon Price. *Id.* at 9:23 - 10:9. Mark McKee told Cory Masterson about the lawsuit regarding Lennon Price and his broken leg and that the suit should have been brought against Masterson and not him. *Id. at* 85:7 – 86:5. Even if the "corrections" of Defendant McKee are taken as true stating that he did not find out about the lawsuit until November 14, 2012, that does not change his testimony that he is "sure" he told Officer Masterson when he found out, which would mean he told Officer Masterson in November 2012 within the Rule 4(m) period.

In addition, the City of Wichita and its officers are all represented by the same legal counsel and thus should have known of the claims because they all possess a identity of interest. The City of Wichita is responsible for the actions of its officers via *respondeat superior* for state law claims, and is required to represent, defend and indemnify its officers in lawsuits for federal or state laws. *See* K.S.A. § 75-6108 (providing for the defense of the state or municipal employee); K.S.A. § 75-6109 (providing for the indemnification of state and municipality employees generally, except for punitive damages). *See also* K.S.A. 75-6116 (similar obligations of governmental entities to represent, defend and indemnify employees in suits under federal or state civil rights laws). Consequently, Officer Masterson "should have known" that the lawsuit would have been brought against him but for the mistaken identity because the City of Wichita must indemnify and defend its employees and the City of Wichita investigate the claims of Mr.

Price. Moreover, the intent of the notice requirements of K.S.A. 12-105b is to allow a municipality like the City of Wichita to investigate allegations regarding its employees and avoid litigation. The City of Wichita was given notice of the claims in this case as required pursuant to K.S.A. 12-105b, including the federal claims, so that the City could investigate the allegations. Since the City of Wichita investigated and denied the claims of Mr. Price, common sense tells us that the City would have spoken with Officer Masterson regarding those claims prior to denying them.   Finally, the City of Wichita itself was served with process for the lawsuit on November 14, 2012 along with Defendant McKee (ECF No. 4). Consequently, its knowledge of the lawsuit and that the wrong person was named should be imputed to Officer Masterson since they share a identity of interest as set forth under Kansas law.

### *Mr. Price mistakenly identified Officer McKee rather than Officer Masterson?*

The example of a "mistake" illustrated by the <u>Krupski</u> Court fits squarely within the facts of Mr. Price's case.  Mr. Price knew other officers were at the scene when he was injured but he did not know their identities. Moreover, and more specifically, Mr. Price did not know that Officer Masterson was the one who injured him.  Simply because Mr. Price knew of the existence of other officers, does not preclude him from making a mistake with respect to each officer's role in the case or to their identities. Mr. Price simply misunderstood the roles that Officer McKee and the other officers played in the "conduct, transaction, or occurrence" giving rise to his claim. According to the holding in <u>Krupski</u>, the mistake of Mr. Price in understanding how his injury occurred and not knowing the identity of the officer likely causing the injury does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

In this case, Lennon Price, believed based on his wife's communications with the Wichita Police Department who informed her that Officer McKee was the arresting officer, that Officer

McKee was the officer who injured Mr. Price. Despite taking Mr. Price into custody, the City of Wichita never served Mr. Price with service of process on the underlying charges against him until May 8, 2013, nearly a year <u>AFTER</u> he submitted his Notice of Claim pursuant to K.S.A. 12-105(b). Consequently, he never received any reports or other documents related to the case through any criminal process. If Mr. Price's former counsel performed any type of investigation, Mr. Price was never given that information.

At no time, did the City of Wichita or Defendant Mark McKee state that Defendant McKee was not the correct Defendant or even allege that Defendant McKee was the wrong party in interest. The Defendants have access to the reports of the incident and knew or should have known that Officer Masterson was the officer described by Mr. Price in his Pleadings and 12-105b Notice of Claim.

Defendants will likely argue that Plaintiff does not have good cause for amending outside the March 15, 2013 time set in this Court's scheduling order because defense counsel sent an email on February 11, 2013 with some documents (including Officer Masterson's report) attached to it that were not part of the formal initial disclosures. To establish "good cause," the party seeking to extend the deadline must establish that the scheduling order's deadline could not have been met with diligence. *Pfeiffer v. Eagle Mfg. Co.,* 137 F.R.D. 352, 355 (D.Kan.1991). Defendant's arguments must fail because of the standard enunciated by the United States Supreme Court in <u>Krupski v. Costa Crociere S. p. A.</u>, *Supra.* To meet the standard enunciated in <u>Krupski</u>, Plaintiff had no choice but to wait until depositions were taken so that he could establish that Masterson knew of the lawsuit prior to the 120 days imposed by F.R.C.P. 4(m) and that Masterson knew he should have been the proper party. Plaintiff scheduled the officers' depositions when it was discovered that Officer McKee was not the offending party. Some delay

in scheduling the deposition is also attributable to the Defendants because new counsel [Mr. Pigg] was retained by the City of Wichita to handle this case. He required some time to get up to speed on his cases. Plaintiff had to wait until the depositions were returned and for the corrections to be returned.

## Conclusion

Pursuant to the two part test set forth in Rule 15(c) and the Supreme Court's decision in Krupski interpreting and applying Rule 15(c), this Court should look to what Officer Masterson actually "knew" or "should have known" regarding the lawsuit filed by Mr. Price and the timeframe in which Officer Masterson obtained that information. Since Officer Masterson knew or should have known about the lawsuit within the Rule 4(m) time period and will not be prejudiced by the substitution, the Court should grant Plaintiff's motion to substitute Officer Masterson for Officer McKee.  By allowing the substitution, the case will be tried on the merits rather than being dismissed because of mistaken identity.

WHEREFORE, Plaintiff respectfully requests that he be allowed to amend his claim to substitute Officer Cory Masterson for Defendant Mark McKee.

Respectfully submitted,

*/s James A. Thompson*
James A. Thompson, #21263
*Of Counsel*
KLENDA AUSTERMAN L.L.C.
1600 Epic Center, 301 N. Main
Wichita, KS  67202
Telephone: 316/267-0331
Facsimile:  316/267-0333
*jthompson@klendalaw.com*
*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 8th day of October, 2013, a true and correct copy of the foregoing document was filed through the CM/ECF system of the United States District Court for the District of Kansas, which is understood to serve copies of the same upon counsel for the parties herein who have entered their appearances in this action and consented to electronic service.

<u>/s/ *James A. Thompson*    </u>