## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LENNON PRICE,  )
           )
        Plaintiff,  )
           )
v.          )
           )  Case No. 12-1432-CM
CITY OF WICHITA, et al.,   )
           )
        Defendants.  )
           )

## MEMORANDUM AND ORDER

The issues in this case arise from an incident where the police officer-defendant allegedly "stomped" on plaintiff's leg while placing him under arrest, breaking plaintiff's tibia and fibula. Plaintiff was granted leave to amend his complaint to include claims of negligent use of force and negligent infliction of emotional distress. Notably, plaintiff did not include a battery claim in his pleadings—presumably because it would have been time-barred by the applicable statute of limitations. The case is now before the court on defendants' motion to dismiss the negligence claims and review the magistrate judge's order granting leave to amend the complaint (Doc. 42).

## I. FACTUAL BACKGROUND

This case arises from events of September 2, 2010, when plaintiff Lennon Price ("Price") alleges defendant Officer Mark McKee ("McKee") of the Wichita Police Department arrested him for a misdemeanor traffic warrant at approximately 12:30 a.m. (Doc. 41 at ¶ 12.) Price alleges he did not resist arrest, and that McKee "stomped" on Price's leg, breaking the tibia and fibula. (*Id.* at ¶¶ 15, 18.) Price contends that "[g]reat force is required to break both the tibia and fibula bones." (*Id.* at ¶ 19.) He also alleges that his wife asked McKee why he broke Price's leg, and McKee responded that Price "tried to run so he hit him with his billy club." (*Id.* at ¶ 20.) The amended complaint also states that

-1-

Price required two surgeries to repair his leg, which involved approximately eleven screws and a metal plate. (*Id.* at ¶ 22.)

In Count 2 of the amended complaint, Price contends that McKee negligently used excessive or unreasonable force while placing him under arrest. (*Id.* at ¶ 30.) In his response to the motion to dismiss, Price clarifies that McKee did not commit battery against Price because he lacked intent to injure; rather, Price asserts that McKee intended only to "trip" Price in order to gain control and effectuate the arrest. (Doc. 20 at 20.) Price suggests that McKee's actions could have been negligent because he may have "accidentally injure[d] Mr. Price by using an unreasonable amount of force." (*Id.*) But these allegations are not contained in the amended complaint itself, and the court therefore does not consider the allegations contained in Price's brief instead of his complaint.

In Count 7 of the amended complaint, Price alleges that McKee negligently inflicted emotional distress upon Price. (Doc. 41 at ¶ 35.) Price contends that the visual image of his broken leg caused him "emotional distress and mental pain," and that he "suffered injuries" as a direct result of McKee's actions. (*Id.* at ¶¶ 35, 37.)

Price filed his Original Complaint in Sedgwick County District Court on August 31, 2012. Magistrate Judge Waxse found that Price's amended complaint—filed February 22, 2013—related back to the Original Complaint's filing date under Federal Rule of Civil Procedure 15(c). (Doc. 35 at 9.) The Original Complaint's filing date is within two years of the date of the incident, and Judge Waxse acknowledged that "plaintiff has pled all the elements of a negligence claim" in the amended complaint. (*Id.* at 6.) The magistrate judge therefore found that the negligence claims included in the amended complaint were not barred under Kan. Stat. Ann. § 60-513(a)(4), which provides a two-year statute of limitations for negligence claims. Defendants did not contest the inclusion of the negligent infliction of emotional distress claim at the time Price sought leave to amend his complaint. (*Id.* at 1.)

Defendants now ask the court to dismiss the negligence claims in Price's amended complaint and/or review the magistrate judge's order permitting Price leave to amend his complaint. Defendants contend that these negligence claims are in substance battery claims, and are therefore subject to a one-year statute of limitations instead of a two-year statute.

## II. MOTION TO DISMISS

### A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts—viewed in a light most favorable to the plaintiff—to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Recounting a cause of action's elements in a conclusory legal nature is insufficient. *Id.* A complaint that does not state a plausible claim upon which the plaintiff may recover should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Negligent Use of Force Claim

First, the court reviews Price's claim for negligent use of force. In form, Price pleads all elements required of a negligence claim. Price alleges: (1) McKee owed him a duty; (2) McKee's breach of this duty was the cause of Price's harm; and (3) the damage resulting to Price's leg was the result of McKee's negligence. But Price's technical pleading does not matter if Kansas does not recognize the tort of negligent use of force. Kansas courts look to the substance of a claim rather than the manner in which the claim is pleaded. *Baska v. Scherzer*, 156 P.3d 617, 622 (Kan. 2007). A court is "not bound by the claims as set forth in the petition," but looks to the substance of the claims to determine the manner in which to adjudicate them. *Id.* at 622. In other words, alleging "negligence does not turn an intentional tort into negligent conduct." *Benavidez v. United States*, 177 F.3d 927, 931 (10th Cir. 1999). If, in fact, Price's claim is a battery claim in disguise, then it is barred by the one-year statute of limitations and must be dismissed. The court therefore turns to this question.

-3-

Battery is an intentional act. Specifically, the Kansas pattern jury instructions define battery as "the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive." PIK Civ. 3d 127.02. In contrast, a claim of negligence requires the plaintiff to show: (1) defendant was under a duty to act; (2) a causal connection between the duty breached by defendant and plaintiff's injury; and (3) damage resulted from defendant's negligence. *Woodruff v. City of Ottawa*, 951 P.2d 953, 954 (Kan. 1997). The principle distinction between battery and negligence is intent: battery is intentional, while negligence is unintentional. *Murray v. Modoc State Bank*, 313 P.2d 304, 307 (Kan. 1957).

A few Kansas cases are instructive on this issue. First, *Dauffenbach v. City of Wichita*, 667 P.2d 380 (Kan. 1983). *Dauffenbach* involved police officers using force against a belligerent man suspected of driving under the influence of alcohol. When approached by police officers, Dauffenbach pushed and attempted to strike the officers. *Id.* at 383. One of the officers grabbed Dauffenbach's arm and flipped him over his shoulder onto the ground, resulting in Dauffenbach's paralysis. *Id.*

The key issue in *Dauffenbach* was which standard applied to decide whether police officers breached a duty. But the Kansas Supreme Court briefly discussed the negligent use of force theory. *Id.* at 384. This discussion developed from the defendant's cross-appeal, which argued that the trial court erred in not striking Dauffenbach's amended petition because it "stated a cause of action on a theory (negligence) different from that (assault and battery) in the original petition." *Id.* at 383. On this point, the court noted that Dauffenbach's original petition stated a cause of action for negligence, alleging that the officers did "negligently assault, beat and injure" him; thus, the Kansas Supreme Court ruled that the trial court did not err in allowing the amended petition to be filed. *Id.* at 382. Notably, the opinion only procedurally dealt with this theory in deciding whether to allow the amended petition to be filed. The court did not opine on the claim's merit, but did state that—while officers are

-4-

ordinarily immune from claims arising out of the performance of their general duties—officers may be subject to liability when a special duty is breached by the officer. *Id.* at 385. Such a special duty may exist when "there is an affirmative act by the officer causing injury." *Id.*

Second, Judge Lungstrum considered a "negligent use of excessive force" claim in *Clark v. Thomas*, 505 F. Supp. 2d 884, 890 (D. Kan. 2007). *Clark* involved police officers attempting to stop the plaintiff's vehicle for traffic violations. *Id.* at 887. After a high-speed chase, the plaintiff abandoned his vehicle and fled on foot. The officer-defendant struck the plaintiff with his police vehicle, resulting in several broken bones. *Id.* at 888.

The defendant testified that he had no intention of striking the plaintiff with his vehicle, but was attempting to "drive alongside" the plaintiff in order to prevent him from escaping to a nearby residential area. *Id.* The defendant further conceded that he owed a special duty to the plaintiff because an affirmative act of the officer-defendant caused injury, which was in accordance with *Dauffenbach*. *Id.* at 890. The court cited *Dauffenbach* in stating:

> The Kansas Supreme Court has set forth the standard for an excessive-force negligence claim as follows:
>
> The general rule is that a law enforcement officer who is making an arrest for a misdemeanor committed in his or her presence has the right to use reasonable force to effect the arrest. The officer has discretion to determine the degree of force required under the circumstances as they appear to the officer at the time. The reasonableness of the force used is a question for the trier of facts. The test to determine the actual amount of force necessary is not one of hindsight. The degree of force used may be reasonable even though it is more than is actually required. The officer may not, however, use an unreasonable amount of force or wantonly or maliciously injure a suspect.

*Id.* (quoting *Dauffenbach* at 1034–35). The defendant moved for summary judgment on the grounds that the special duty was not breached because only a reasonable and necessary amount of force was employed. *Id.* at 890. In denying the defendant's motion for summary judgment, the court concluded that reasonableness of force was a factual question best relegated to a jury. *Id.* at 892.

Third, in *Campbell v. City of Leavenworth*, 13 P.3d 917 (Kan. App. Ct. 2000), the Kansas Court of Appeals addressed a negligence claim involving police officers shooting a suspect. The plaintiff alleged that the officers negligently performed their official duties in shooting and killing the suspect—who was charging at them with a large metal object. *Id.* at 121. The court gave little consideration to this argument because the officers acted reasonably in self-defense. *Id.* at 127. In addressing this negligence claim, the court noted that the plaintiff was unable to show the officers owed any special duty to the deceased suspect. *Id.*

Fourth, the Kansas Court of Appeals again mentioned the negligent use of force in *Nemecheck v. City of Garden City*, 233 P.3d 314, 2010 WL 2720668 (Kan. Ct. App. July 2, 2010). *Nemecheck* is not directly on point, but it mentioned negligent force during an arrest in the context of the discretionary function exception, which shields officers from suits arising from the performance of a discretionary function or duty. *Id.* at *4. No claim of negligent use of excessive force was asserted. The court merely stated that "the discretionary function exception does not shield an officer's use of excessive—as opposed to mere negligent—force to arrest." *Id.*

Finally, the Tenth Circuit acknowledged in *Grauerholz v. Adcock*, 51 F. App'x 298 (10th Cir. 2002), that the district court had ruled that negligent excessive force did not constitute a claim in Kansas. The Tenth Circuit affirmed on the grounds that the officers' use of force was reasonable and necessary. *Id.* at 301. Significantly, the court noted that it "[did] not reach questions of Kansas law concerning the status of such a [negligent use of force] claim." *Id.* at 301 n.3.

These cases are instructive and influence the court's ruling here. While officers are ordinarily immune from liability on claims arising from the performance of their general duties, *Dauffenbach* and *Clark* instruct that officers may be subject to liability when injury results from the affirmative act of an officer, which gives rise to a special duty. *See Dauffenbach*, 667 P.2d at 385; *Clark*, 505 F. Supp. 2d

at 890. Here, Price alleges that he was injured by McKee's affirmative act of stomping on Price's leg. *Dauffenbach* and its progeny suggest this could be the breach of a special duty if the fact-finder concludes the use of force was unreasonable under the circumstances. In light of this, defendants' motion to dismiss is denied because Price alleges a plausible claim for relief under the theory asserted in *Dauffenbach* and *Clark*.

The Court recognizes the unusual nature of Price's claim, which attaches a negligence label to an act—stomping—that appears quite intentional. This peculiarity was highlighted in *Nemecheck*, which noted that excessive force and negligent force seem in opposition to one another. *See* 2010 WL 2720668, at *4. Indeed, there are several cases that suggest the court should not allow this claim to go forward. In *Baska*, a Kansas Supreme Court case heavily relied on by defendants, the court used the doctrine of transferred intent to hold that striking an unintended victim was, in substance, an intentional act, and not a negligent act. 156 P.3d at 628. Similarly, the Eleventh Circuit has stated that "there is no such thing as the negligent commission of an intentional tort," and that such an assertion is an "oxymoron." *Secondo v. Campbell*, 327 F. App'x 126, 131 (11th Cir. 2009). And in the underlying district court decision in *Grauerholz*, Judge Marten held that Kansas law did not permit negligent use of excessive force because it would be immunized under the Kansas Tort Claims Act. No. 00-1520-JTM, 2002 WL 226405, at *6 (D. Kan. Feb. 8, 2002) (citing *Fuentes v. Thomas*, 107 F. Supp. 2d 1288 (D. Kan. 2000)).

But *Deffenbach* recognized the theory; Judge Lungstrum denied summary judgment on this type of claim in *Clark*; and the Tenth Circuit declined to comment on its merits *Grauerholz*. In light of these outcomes, the court cannot grant defendants' motion to dismiss.

Further, the court cannot hold—based on the allegations in the complaint—that the discretionary function immunity would apply. Defendants have not shown that the discretionary function exception applies as a matter of law.

**C.     Negligent Infliction of Emotional Distress Claim**

The court next turns to Price's claim for negligent infliction of emotional distress ("NIED"). To ultimately succeed on this claim, a plaintiff must show that the "conduct complained of was accompanied by, or resulted in, immediate physical injury." *Reynolds v. Highland Manor, Inc.*, 954 P.2d 11, 13 (Kan. Ct. App. 1998). Further, the plaintiff must show that the physical injuries were the "direct and proximate result of the emotional distress caused by the [defendant's] alleged negligent conduct." *Id.* Kansas courts have refused to entertain claims of NIED where the physical effects resulting from the emotional distress manifested in headaches, nausea, insomnia, and other general physical and emotional discomforts. *Lee v. Kan. State Univ.*, No. 12-2638-JAR, 2013 WL 2476702, at *10 (D. Kan. June 7, 2013). Kansas requires a particularly high showing of physical injuries associated with such distress in an effort to prevent recovery for plaintiffs feigning emotional distress. *Reynolds*, 954 P.2d at 13. Additionally, such physical injuries must be close in time to the initial incident. *See Hoard v. Shawnee Mission Med. Ctr.*, 662 P.2d 1214, 1221 (Kan. 1983) (stating that physical injuries occurring over a month after the incident were too remote from the incident to show causation).

A recent case granted motions to dismiss claims of NIED and intentional infliction of emotional distress because the showing of physical injury was not severe enough. *Lee*, 2013 WL 2476702, at *10–11. As a result of the incident, the plaintiff in *Lee* allegedly suffered "emotional distress to such an extreme degree that the law must intervene because . . . no reasonable person should be expected to endure it," which manifested itself physically in the form of abdominal pain for which

plaintiff sought medical attention. *Id.* at *10.  The court stated that conclusory statements of this nature were insufficient, and the physical injury resulting from the distress was not severe enough for the plaintiff to advance these claims. *Id.* at *10–11.

Here, Price merely alleged that McKee's actions "caus[ed] him emotional distress and mental pain," and this resulted in "injuries."  This is a recital of the claim's required elements rather than a specified factual basis for the claim.  Price specifies neither the type of injuries nor when they occurred.  While the Court recognizes Price suffered a broken leg from the initial incident, a NIED claim requires physical symptoms that result from the emotional distress caused by this initial incident.  McKee's motion to dismiss the claim of NIED is granted because Price did not sufficiently plead the claim under *Twombly*, and Price's injuries resulting from the emotional distress lack the required severity.

### III. MOTION TO REVIEW MAGISTRATE'S ORDER

Defendants also ask the court to review Judge Waxse's order allowing plaintiff to amend his complaint to add the negligence claims.  Judge Waxse found that amendment was not futile because Price "pled the elements of a negligence claim." (*Id.* at 7.)

The analysis here mirrors the discussion regarding whether to dismiss the negligence claims in the amended complaint under Rule 12(b)(6).  *See Hoskinson v. High Gear Repair, Inc.*, No. 11-1190-JTM, 2013 WL 4028804, at *3 (D. Kan. Aug. 7, 2013) (stating that to evaluate futility, the court looks at whether an amendment would survive a Rule 12(b)(6) motion to dismiss).  As discussed above, the negligent use of force claim survives a motion to dismiss.  The motion to review the magistrate judge's order with regard to this claim is therefore denied.

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss Negligence Claims and to Review Magistrate's Order (Doc. 42) is granted in part and denied in part.  The court dismisses the

negligent infliction of emotional distress claim. The negligent use of force claim remains in the case, and the court overrules defendants' objection to Judge Waxse's order.

Dated this 19th day of November, 2013, at Kansas City, Kansas.

                                              s/ Carlos Murguia
                                              **CARLOS MURGUIA**
                                              **United States District Judge**