IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LENNON PRICE,

        Plaintiff,

v.                                           Case No. 12-1432-CM-DJW

CITY OF WICHITA, and
CITY OF WICHITA POLICE
DEPARTMENT OFFICER
MARK McKEE, Individually and
in his Official Capacity,

        Defendants.

## MEMORANDUM AND ORDER

In this civil rights action under 42 U.S.C. § 1983, Plaintiff asserts a Fourth Amendment claim for excessive force and state law claim for negligent use of force. Plaintiff alleges that he suffered a broken leg while being arrested by uniformed City of Wichita police officers on September 2, 2010. In his complaint, Plaintiff originally identified the officer whose leg sweep action broke his lower left leg as officer Mark McKee and named him as a defendant in the action. Plaintiff now claims that it was a different officer, Cory Masterson, whose leg sweep actually broke his leg. This matter is presently before the Court on Plaintiff's Motion to Substitute Party (ECF No. 58). Plaintiff requests leave under Fed. R. Civ. P. 15 and 21 to substitute officer Masterson in place of existing defendant McKee based upon a mistaken identification. As explained below, the Court finds that Plaintiff has shown excusable neglect for the late filing of his motion. He has further shown that the amendment relates back under Fed. R. Civ. P. 15(c)(1)(C). The motion is granted.

**I.    FACTUAL BACKGROUND**

Plaintiff filed his complaint in Sedgwick County, Kansas District Court on August 31, 2012.

Plaintiff served his K.S.A. 12-105b notice of his claims against the City of Wichita on August 31, 2012. He served defendant McKee with summons and the complaint on November 14, 2012. Defendant McKee filed his Notice of Removed with this Court on November 16, 2012. On December 5, 2013, defendant McKee filed his answer. The City of Wichita filed an answer the same day.

The Scheduling Order entered in this case set a March 15, 2013 deadline for filing motions to add parties or amend the pleadings. Although the parties moved to extend several other Scheduling Order deadlines, the original deadline for amending and adding parties was never extended.

On February 11, 2013, Defendants produced documents, including the narrative reports of officers McKee and Masterson. The reports describe that Masterson did a "leg sweep" to knock Plaintiff off balance and that McKee later applied two knee strikes to Plaintiff's leg in order to subdue Plaintiff.

Plaintiff filed his motion to amend his complaint to add his state law claims and add the City of Wichita as a named defendant on February 22, 2013.

In April 2013, Plaintiff's counsel began verbal discussion with defense counsel who was representing Defendants at that time regarding the need to amend to substitute officer Masterson for defendant McKee.

At the end of May 2013, Defendants retained a law firm to represent it in this case. They were previously represented by an attorney from the Office of the City Attorney of the City of Wichita, Kansas. On May 31, 2013, Plaintiff's counsel advised newly retained defense counsel by email that Plaintiff would be filing a motion to add officer Masterson and inquired whether Defendants would

object to that motion. Defense counsel responded that he was just getting up to speed on the case and would get back to Plaintiff's counsel.

Plaintiff deposed defendant McKee on June 26, 2013, and Masterson the following day. During their respective depositions, they testified that they had spoken about the lawsuit a couple times.

The Court granted Plaintiff's motion to amend on July 8, 2013 (ECF No. 35), and Plaintiff thereafter filed his Amended Complaint (ECF No. 41) adding his state law claims and the City of Wichita as a defendant on July 19, 2013. Defendants City of Wichita and McKee filed their joint Answer to Plaintiff's Amended Complaint on August 2, 2013.

On July 31, 2013, counsel for Defendants advised Plaintiff's counsel that Defendants would not agree to the substitution.

On August 26, 2013, defendant McKee signed an correction or errata sheet for two corrections to his June 26, 2013 deposition.

Plaintiff filed the instant Motion to Substitute Party on October 9, 2013.

## II. UNTIMELINESS OF MOTION FOR SUBSTITUTION

Defendants argue that Plaintiff failed to file his motion to substitute officer Masterson in place of Defendant McKee by the March 15, 2013 deadline set by the Scheduling Order for filing motions to add parties and has failed to establish good cause to modify the scheduling order to allow the late amendment. They point out that the narrative reports of both McKee and Masterson were provided to Plaintiff's counsel on February 11, 2013. Based upon these reports, Plaintiff should have known then that Masterson (along with McKee and another officer Piner) was involved in the arrest. Defendants further point out that on February 22, 2013, Plaintiff filed a motion for leave to amend

his complain to include additional state law claims and other amendments, but did not seek to amend his complaint to add Masterson as a defendant at that time.

Plaintiff asserts he has shown "good cause" pursuant to Fed. R. Civ. P. 16 for the delayed filing of his motion based on his need for discovery to meet the requirements for establishing relation back under Rule 15(c), which could not have been met with due diligence. He also states that his counsel's personal injury and sick child in February and March 2013 delayed discovery into whether officer Masterson was the officer that injured Plaintiff's lower leg. Plaintiff claims that when his counsel learned that officer Masterson was the officer that injured Plaintiff rather than McKee, he immediately began discussions with defense counsel about the need to amend the pleadings. To determine whether Plaintiff could meet those requirements, the parties agreed the depositions of the officers would need to be taken to discover whether Masterson knew or should have known about the lawsuit within the time period limit for relation back provided by Rule 15(c).

While Fed. R. Civ. P. 16 specifically concerns scheduling orders and provides that a schedule "may be modified only for good cause,"[1] Rule 6(b)(1)(B) requires a showing of "excusable neglect" if a motion seeking an extension of a deadline is filed after the scheduling order deadline set for filing it. The standard for considering what constitutes "excusable neglect" is set forth by the United States Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*:[2]

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the

---

[1] Fed. R. Civ. P. 16(b)(4).

[2] 507 U.S. 380, 394 (1993).

party's omission. These include . . . the danger of prejudice . . . the length or delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within reasonable control of the movant, and whether the movant acted in good faith.[3]

Considering the *Pioneer* factors set out above, the Court finds that Plaintiff has shown excusable neglect for the seven-month delay in filing his motion to substitute. The delay was caused in large part by the parties' need for discovery into whether the individual to be brought into the action, officer Masterson, had notice of the action, whether he knew or should have known that the action would have been brought against him but for a mistake concerning his identity, and whether this occurred by the 120-day time limit for the amendment to relate back under Rule 15(c)(1)(C). Masterson and McKee were not deposed until late June 2013, causing a delay in the deposition transcripts and, in turn, McKee's errata sheet corrections. All these events were well after the March 15, 2013 Scheduling Order deadline for filing motions to add parties. Also contributing to the delay were the parties' efforts to resolve the matter by agreement and some delay due to Plaintiff waiting on new defense counsel to get up to speed on the case and waiting to hear if Defendants opposed the substitution. Defendants have been aware of Plaintiff's intention to request substitution of Masterson for McKee for several months before the motion was actually filed so there is little prejudice to Defendants from Plaintiff's delay in filing the motion. As it is likely that current defense counsel will represent officer Masterson if he is substituted, there is also little prejudice to Masterson from the delay. Finally, there has been no suggestion that Plaintiff purposefully delayed in filing the motion or was otherwise not acting in good faith. Plaintiff has thus shown excusable neglect for the untimely filing his motion to substitute. Based upon the same reasons, Plaintiff has likewise shown

---

[3]*Id.*

good cause for extending the deadline for filing his motion for substitution.

## III. SUBSTITUTION OF A PARTY UNDER RULES 15 AND 21

Federal Rule of Civil Procedure 21 provides that "[o]n motion or its own, the court may at any time, on just terms, add or drop a party." This rule empowers courts to add or substitute a party at various stages of litigation.[4] Rule 21 thus permits substitution of a party in those circumstances where Rule 25 does not apply.

Although Rule 21 allows a party to be added, Rule 15(a) governs the general amendment of pleadings before trial. It instructs that the court "should freely give leave when justice so requires."[5] The court's decision to grant leave to amend a complaint, after the permissive period, is within the trial court's discretion and will not be disturbed absent an abuse of that discretion.[6] The court may deny leave to amend upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."[7]

The party asserting futility of amendment has the burden to establish futility of the proposed

---

[4]*Graham v. Thornburgh*, 207 F. Supp. 2d 1280, 1284 (D. Kan. 2002) (citing *Mullaney v. Anderson*, 342 U.S. 415, 417 (1952) (noting that "Rule 21 will rarely come into play at this stage of a litigation" but granting petitioner's motion to add parties on the grounds that "[t]o dismiss the present petition and require the new plaintiffs to start over in the District Court would entail needless waste")).

[5]*Id*.; *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).

[6]*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

[7]*Id*. (quoting *Foman*, 371 U.S. at 182).

amendment.[8] A proposed amendment is futile if the amended claim would be subject to dismissal.[9] In determining whether a proposed amendment should be denied as futile, the court must analyze a proposed amendment as if it were before the court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[10] In doing so, the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party.[11]

**IV.  WHETHER THE PROPOSED AMENDMENT ADDING MASTERSON WILL RELATE BACK UNDER FED. R. CIV. P. 15(c)(1)(C)**

Defendants next argue that Plaintiff's motion to substitute Masterson as a defendant in place of McKee would be futile because the two-year statue of limitations has expired and the proposed amendment does not relate back under Rule 15(c)(1)(C). Therefore any claim against Masterson is out of time and would be subject to immediate dismissal.

Plaintiff maintains that his motion is not futile because the depositions of Masterson and McKee establish that Masterson had actual knowledge about this lawsuit before December 29, 2012, and knew or should have known that he was the proper party to the lawsuit but for Plaintiff's mistake as to the identity of the officer whose actions actually broke Plaintiff's leg.

Federal Rule of Civil Procedure 15(c) governs when an amended pleading "relates back" to the date of a timely filed original pleading and is thus itself timely even though it was filed outside

---

[8]*Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-CV-2381-JWL-GLR, 2011 WL 3847076, at *5 (D. Kan. Aug. 29, 2011).

[9]*Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).

[10]*Collins v. Wal-Mart, Inc.*, 245 F.R.D. 503, 507 (D. Kan. 2007).

[11]*Anderson*, 499 F.3d at 1232.

an applicable statute of limitations.[12] Under Rule 15(c)(1)(C), an amendment that changes the party relates back to the date of the original pleading if Rule 15(c)(1)(B)[13] is satisfied and if, "*within the period provided by Rule 4(m) for serving the summons and the complaint*," the party to be brought in by amendment:

> (i) received such notice of that action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the party's proper identity.[14]

The Rule 4(m) time limit for service of the summons and complaint is 120 days after the complaint is filed. A plaintiff must therefore show that each proposed defendant "received such notice of the action that [he] will not be prejudiced in defending on the merits" and knew or should have known that the action would have brought against him but for a mistake within the 120-day time period contemplated by Rule 4(m).

As the Supreme Court noted in *Krupski v. Costa Crociere S. p. A.*,[15] the purpose of relation back is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular,

---

[12]*Krupski v. Costa Crociere S. p. A.*, 130 S. Ct. 2485, 2494 (2010).

[13]Rule 15(c)(B) requires that the amendment assert a "claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." This parties do not dispute that the claim to be asserted against Masterson arose out of the same occurrence as the claim Plaintiff asserts against defendant McKee.

[14]Fed. R. Civ. P. 15(c)(1)(C) (emphasis added).

[15]130 S. Ct. 2485.

for resolving disputes on their merits."[16] The Court explained that while a prospective defendant who legitimately believed the limitations period had passed may have a strong interest in repose, such repose would be a "windfall" for one who understood, or should have understood, that he or she escaped suit only because the plaintiff was mistaken about a crucial fact about his or her identity.[17] The *Krupski* Court also held that for purposes of Rule 15(c)(1)(C)(ii) it is what the prospective defendant knew or should have known during the Rule 4(m) period that is relevant, and not what the plaintiff knew or should have known.[18]

1. **Whether Masterson Received Notice of the Action**

The Court finds that Plaintiff has shown Masterson received actual notice of the action from his conversations with defendant McKee. A review of McKee and Masterson's respective depositions reveals that they both admitted speaking to each other about this lawsuit. At his deposition, Masterson testified that McKee had spoken to him about the lawsuit after McKee was sued.[19] Likewise, McKee admitted in his deposition that he had spoken to Masterson about the lawsuit. He stated that he was "sure [they] talked about being sued."[20]

The parties do not dispute that McKee and Masterson talked about the lawsuit, they do however dispute the timing of when those conversations occurred. Plaintiff claims that defendant McKee knew about the lawsuit in September 2012 and testified that he had a conversation with

---

[16]*Id.* at 2494.

[17]*Id.*

[18]*Id.* at 2493–94.

[19]Masterson Dep., 9:4–13, June 27, 2013.

[20]McKee Dep., 10:6–20, June 26, 2013.

Masterson "at that point," meaning in September 2012. Plaintiff claims that defendant McKee tries to use the errata sheet to change his prior testimony. But even using the November 14, 2012 date McKee gives in the deposition errata sheet, Plaintiff points out that defendant McKee stated he had a conversation with Masterson "at that point," i.e., the point McKee was sued. Either date would be prior to December 29, 2012, and would be within 120 days of Plaintiff filing suit.

Defendants argue that neither Masterson nor McKee ever testified that Masterson became aware of the lawsuit prior to December 29, 2012. They disagree with Plaintiff's characterizations of McKee's deposition testimony. According to Defendants, McKee testified at his deposition that he "assumed" he learned of Price's lawsuit within a month after it was filed. In his errata sheet, McKee clarified that he did not learn of the lawsuit until he was served on November 14, 2012, and met with a City attorney on November 19, 2012. McKee said he was sure he had a conversation with Masterson after he was sued, but McKee was no longer on patrol at that point and did not see Masterson on a daily basis, he thus had only limited contact with him. In his errata sheet, McKee further clarified his deposition testimony that he did not specifically recall when he talked with Masterson about the lawsuit. Defendants argue that the mere fact that Masterson and McKee agree that they briefly discussed the fact that McKee was sued does not amount to evidence that Masterson received notice of the action within 120 days of the filing of the complaint as required by Rule 4(m).

For Plaintiff's proposed amendment substituting Masterson in place of defendant McKee to relate back to the August 31, 2012 filing date of his complaint, Plaintiff must show that (1) Masterson received such notice of the action that he would not be prejudiced, and (2) knew or should have known that the action would have been brought against him, but for a mistake concerning the proper party's identity. And more importantly here, Plaintiff must establish that these occurred

within 120 days of the date he filed the complaint. Plaintiff filed his action in state court on August 31, 2012 and served his complaint on defendant McKee on November 14, 2012. The parties do not dispute that the 120-day time period for notice under Rule 15(c)(1)(C) expired on December 29, 2012.

Based upon its review of the depositions and McKee's errata sheet, the Court finds that Plaintiff has sufficiently shown that Masterson received notice of the action before December 29, 2012—within the 120-day time period contemplated by Rule 4(m). McKee originally testified that he first became aware he was going to be sued by Plaintiff when defense counsel called him. He assumed that date to be somewhere in September 2012. Specifically, McKee answered as follows:

> Whenever [defense counsel] Mr. Townsley called me. It, I assume, would be somewhere in September of 2010. Or within a month of the lawsuit, somewhere in there. September of what 2012, actually, sorry. Two years after the incident.

McKee later corrects this deposition testimony in his August 26, 2013 errata sheet to: "When I was served with the petition on November 14, 2010,[21] I met with Mr. Townsley shortly after that on November 19."[22] McKee explains in his errata sheet that the reason for the change to his deposition testimony was because he "refreshed my recollection by checking the dates of service and checking on my calendar the date that I met with [defense counsel] Mr. Townsley. My answer assumed that his had occurred shortly after the 2-year statute of limitations but it was not until later after service."[23] McKee thus clarified that it was mid-November 2012 when he first became aware he was

---

[21]The Court assumes that McKee's errata sheet reference to the year "2010" is a typographical error and McKee meant "2012."

[22]McKee Dep. Correction Sheet, Ex. 6 to Pl.'s Mem. in Supp. (ECF No. 59-6).

[23]*Id.*

going to be sued by Plaintiff. The correction changing the month he first became aware of the lawsuit from September to November seems reasonable given that McKee was not actually served with Plaintiff's complaint until November 14, 2012.

With respect to the timing of when McKee talked to Masterson, Plaintiff points to deposition testimony where McKee stated he was "sure" he and Masterson had a conversation "at that point," referring to the time when McKee found out when he was being sued. Defendants point out that McKee corrected this specific testimony in his errata sheet, wherein McKee clarified that he did not specifically recall when he talked with Masterson about the lawsuit. In his second correction to his errata sheet, McKee changes his testimony "I'm sure we had conversation at that point" to:

> I don't specifically recall but we probably talked at some point. I didn't return from my assignment at the academy to patrol until December 25, 2012 and would not have had regular contact with Officer Cory [Masterson] until after my return to Patrol South.[24]

McKee suggests in his corrected testimony that any conversation with Masterson would likely have been after December 25, 2012 because that is when he returned from the academy assignment to patrol and he would not have had regular contact with Masterson until after he returned to patrol.

The Tenth Circuit has adopted a restrictive view of the deposition changes that can be made pursuant to Fed. R. Civ. P. 30(e), and takes a dim view of substantive alteration of deposition testimony: "We do not condone counsel's allowing for material changes to deposition testimony and certainly do not approve of the use of such altered testimony that is controverted by the original testimony."[25] It found that the purpose and scope of Rule 30(e) was best expressed as follows:

---

[24]*Id.*

[25]*Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002).

-12-

> The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.[26]

A change is material if it bears on an essential element of a claim or defense.[27]

The Tenth Circuit in *Burns v. Board of County Commissioners*[28] has held that Rule 30(e) deposition corrections should be treated the same as sham affidavits and evaluated under the factors set forth in *Franks v. Nimmo*.[29] In *Burns*, the court applied the following factors in evaluating material changes to deposition testimony: whether the deponent was cross-examined at his deposition, whether the corrections were based on any newly-discovered evidence, and whether there was confusion at the deposition that the corrections would need to be clarified.[30]

Here, the Court finds that defendant McKee has made material alterations to his deposition testimony by changing his response "I'm sure we had conversation at that point," to "I don't specifically recall but we probably talked at some point." The Court finds this change to be a material alteration of McKee's deposition testimony because it goes directly toward the timing of when McKee told Masterson about the lawsuit, and thus if the amendment would relate back under

---

[26]*Id.* (quoting *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992)).

[27]*Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[28]330 F.3d 1275, 1282 (10th Cir. 2003).

[29]796 F.2d 1230, 1237 (10th Cir. 1986).

[30]*Burns*, 330 F.3d at 1282.

Rule 15(c)(1)(C). A reasonable inference of McKee's original deposition statement "I'm sure we had a conversation at that point" would be that McKee had a conversation about the lawsuit when he first learned about it, in November 2012. McKee's change of this deposition testimony to "I don't specifically recall . . ." effectively changes his testimony regarding the timing of when he talked to Masterson. Because the errata sheet change is material, the Court considers the factors set forth in *Burns* in deciding whether McKee's errata sheet change should be disregarded.

McKee makes only two corrections to his June 26, 2013 deposition testimony in his errata sheet. He provides an explanation for his first change to the month of when he first learned about the lawsuit. For his second change, his stated sole reason is "clarification." The Court thus finds his explanation for the material change to be suspect. Under the *Burns* factors, it does not appear that McKee was cross-examined on this issue at his deposition, at least based upon the limited number of his deposition pages provided to the Court. There is no suggestion that McKee's correction was based upon new evidence. Finally, McKee's original deposition testimony does reflect any confusion at the deposition that would need clarification. Considering the factors set forth in *Burns*, the Court finds that McKee's errata sheet change to his original deposition testimony "I'm sure we had a conversation at that point" should be disregarded.

If the errata sheet correction is disregarded, then McKee's testimony "I'm sure we had a conversation at that point" following his testimony that he first became aware of the lawsuit in November 2012 would be sufficient evidence to show that Masterson received actual notice of the lawsuit before December 29, 2012.

## 2. Whether Masterson Knew or Should Have Known That the Action Would Have Been Brought Against Him but for a Mistake

In addition to showing Masterson received notice of the action, Plaintiff must also demonstrate that Masterson "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity" within the Rule 4(m) period.[31]

Plaintiff asserts that McKee testified at his deposition that he had a conversation with officer Masterson after he was sued about Masterson being the one who should have been in the lawsuit rather than himself. Officer Masterson similarly testified that he knew he should have been the one Plaintiff sued. He admitted during his deposition that he believed it was his kick during the arrest that broke Plaintiff's leg.

The Court has reviewed Masterson's deposition testimony and finds that his testimony supports a finding that Masterson knew he should have been the one sued but for Plaintiff's mistake as to the officer whose action actually broke Plaintiff's leg.

> Q. When you had your discussion with Detective McKee, I mean, was it a hey, I got sued, you know?
> A. And he said it was over the incident that, you know, the dislocated ankle type incident, and we know right away what it was and everything, but that's.
> Q. And you don't -- I'm assuming you don't think that McKee should be in this case?
> A. Huh?
> Q. You don't think McKee should be a defendant in this case?
> A. Are you wanting my opinion?
> Q. Yeah.
> A. I don't think there is a case. I don't think either one of us, but that's my opinion.
> Q. But with Officer McKee specifically, I mean, he was not --

---

[31]Fed. R. Civ. P. 15(c)(1)(C)(ii).

> A. Oh, no -- yeah.[32]

Officer Masterson was also asked about his knowledge as to whose kick broke Plaintiff's ankle. He testified that he believed that it was his kick, and not officer McKee's, that broke Plaintiff's ankle.[33]

Finally, Defendants argue that Plaintiff's failure to name officer Masterson as a defendant was not a "mistake" within the meaning of Rule 15(c)(3)(B). Here, Plaintiff has convinced the Court that his naming the wrong police office as a defendant to this action resulted from Plaintiff's mistaken belief that it was officer McKee's action during the arrest rather than Masterson's that caused his broken leg.

In summary, the Court finds that Plaintiff has shown that Masterson, the party to be brought in by the amendment, received notice of the action and knew that the action would have been brought against him but for a mistake concerning the proper party's identity within the 120 days of the filing of the complaint. Plaintiff's proposed amendment to substitute Masterson for defendant McKee therefore relates back to the date the original complaint was filed under Fed. R. Civ. P. 15(c)(1)(C).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Substitute Party (ECF No. 58) is GRANTED. Plaintiff shall electronically file his Second Amended Complaint that substitutes officer Masterson for defendant McKee within seven (7) days of the date of this Order. He shall serve summons and the Second Amended Complaint upon newly added defendant Masterson within thirty (30) days of the date he files his Second Amended Complaint.

---

[32] Masterson Dep. 10:7–25.

[33] Masterson Dep. 131:9–17.

Dated this 20th day of December, 2013, at Kansas City, Kansas.

s/David J. Waxse  
David J. Waxse  
United States Magistrate Judge